# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LESLIE MICHNIEWICZ, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | |
| METASOURCE, LLC, d/b/a METASOURCE, | : | NO. 09-2974 |
| Defendant. | : | |
| LORETTA KEOUGH, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| METASOURCE, LLC, d/b/a METASOURCE, | : | NO. 09-4743 |
| Defendant. | : | |

## MEMORANDUM ON SUMMARY JUDGMENT

Baylson, J.                                                                November 19, 2010

Plaintiffs Leslie Michniewicz ("Michniewicz") and Loretta Keough ("Keough," collectively with Michniewicz, "Plaintiffs") commenced separate actions[1] bringing interference and retaliation claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et

---

[1] Although the two cases were consolidated only for discovery purposes (Michniewicz, ECF No. 26; Keough, ECF No. 10), both Plaintiffs filed a Joint Statement of Material Facts and joint Response to Metasource's Motions for Summary Judgment (Michniewicz, ECF No. 32; Keough, ECF No. 15), and Metasource's Motions and Reply briefs in the two cases contain the same legal arguments. In light of the parties' willingness to have the two Motions addressed together, coupled with the similarity in the underlying facts and interests of judicial economy, the Court will examine and address the Motions together in this Memorandum.

1

seq., against their former employer Metasource, LLC, d/b/a Metasource ("Metasource"). Plaintiffs had been employed by Metasource as full-time document preppers, and allege, inter alia, that Metasource denied or otherwise interfered with their substantive rights under the FMLA and retaliated against them by terminating them while they were on FMLA leave for surgical procedures. Pending before the Court are Metasource's Motions for Summary Judgment (Michniewicz, ECF No. 28; Keough, ECF No. 11, collectively "Summ. J. Mots."), which seek to dismiss all of Plaintiffs' claims. After oral argument on the pending motions and an exhaustive review of the record, and for the reasons that follow, both Motions will be **denied**.

I.  **Factual and Procedural Background**

   A.  **Plaintiffs' Employment**

Metasource is a business processing outsourcing company. (Jones Dep. 20:7-12.[2]) Michniewicz began working for Metasource as a temporary employee in March 2007,[3] and became a full-time employee in May 2007. (Pls.' Facts ¶ 6.) Keough began working for Metasource as a temporary employee in late 2006, and became a full time employee in November 2007. (Keough Dep. 9:22-24, 14:15-15:11.[4]) Both plaintiffs were terminated on June 15, 2009. (Def.'s Facts, Ex. A, Payroll Records.)

Plaintiffs worked as document preppers under the supervision of Scott Doyle ("Doyle").

---

[2] A full transcript of William Jones's deposition testimony appears as Exhibit K to Plaintiffs' Joint Statement of Material Facts.

[3] The parties appear to disagree regarding whether Michniewicz started as a temporary employee in March or April 2007. Because the facts must be construed in the non-moving party's favor, we will assume Michniewicz started in March 2007.

[4] A full transcript of Keough's deposition testimony appears as Exhibit A to Plaintiffs' Joint Statement of Material Facts, and excerpts appear as Exhibit B to Defendant's Statement of Material Facts in No. 09-4743.

(Michniewicz Dep. 62:3-8 [5]; Keough Dep. 34:12-16.)  Doyle supervised Plaintiffs during their entire tenures at Metasource.  (Michniewicz Dep. 62:3-8; Keough Dep. 34:12-16.)  As preppers, Plaintiffs were responsible for preparing clients' documents for processing – they removed paperclips and staples, fixed bent corners, and organized the documents in line with bar-coded materials.  (Michniewicz Dep. 53:21-54:14; Keough Dep. 49:20-50:12.)  Preparation specifications varied across clients.  (Keough Dep. 50:20-24.)  Both Plaintiffs believe that Doyle preferred, and showed favoritism towards, the other document preppers.  (Michniewicz Dep. 116:3-10; Keough Dep. 54:19-55:22.)

Neither Plaintiff was disciplined during her employment with Metasource.  (Pls.' Facts ¶¶ 12-14, Def.'s Resp. to Pls.' Facts ¶¶ 12-14; & Ex. E, at 3; Doyle Dep. 61:19-23, 68:2-7.[6])  But Michniewicz did testify that on three separate occasions, Doyle made comments about her ability to work in light of her problems with her hands.  (Michniewicz Dep. 108:16-109:3.)  She testified that on the third occasion, Doyle said, "I don't know why you're still working here.  Why don't you just quit, because if your hands are hurting that much, or whatever, I don't know why you just don't leave this job and quit.  Don't you think it would be better for you and the health of your hands?"  (Michniewicz Dep. 108:19-109:2.)  Michniewicz responded, "[O]nce my operation my hands are going to be good again."  (Michniewicz Dep. 109:2-3.)  Keough does not contend that Doyle made any statements to her or others regarding her health.

---

[5] A full transcript of Michniewicz's deposition testimony appears as Exhibit B to Plaintiffs' Joint Statement of Material Facts, and excerpts appear as Exhibit B to Defendant's Statement of Material Facts in No. 09-2974.

[6] A full transcript of Doyle's deposition testimony appears as Exhibit J to Plaintiffs' Joint Statement of Material Facts, and excerpts appear as Exhibit C to Defendant's Statements of Material Facts.

In April 2009, Michniewicz requested and was granted leave for neck surgery, and Keough requested and was granted leave for surgery to remove a cyst. (Michniewicz Dep. 86:12-21, 92:9-93:2; Keough Dep. 46:4-12.) Michniewicz also applied for and received short-term disability benefits. (Michniewicz Dep. 93:3-23.)

B.  **Metasource's Business**

In late 2008, Metasource experienced reduced demand from three customers – TastyKake, Prestige Windows, and Swift Trucking. (Doyle Dep. 108:12-111:7, 112:21-24.) During the same time-frame Metasource was contemplating the acquisition of a competitor, Capture Resources, Inc. (Doyle Dep. 22:4-23:17.) Capture Resources, located across the street from Metasource's Bristol, Pennsylvania location, performed the same nature of work as Metasource. (Doyle Dep. 18:10-17.)

Both Plaintiffs acknowledged there was less work during this timeframe (Michniewicz Dep. 61:14-20; Keough Dep. 39:16-40:19), and Michniewicz acknowledged lay offs occurred (Michniewicz Dep. 95:13-22). Although there was less work, Doyle testified that Metasource continued to utilize two shifts of workers throughout 2009, but at times used only one shift in 2008. (Doyle Dep. 9:7-21.) Doyle clarified, "Business can be extremely slow, but we'll still run 16 and a half hour days because there's nothing you can do about that one client who is sending us work at 6 o'clock at night. We have to be there. Even if the first shift goes home at 1 o'clock that day because the volume is low, the second shift is still coming in . . . ." (Doyle Dep. 90:3-10.) Further, there would be only one shift when "there [is] no business for the second shift to work." (Doyle Dep. 90:14-17.)

As a result of less demand, Metasource reduced its workforce commensurate with the

4

diminished workload. (Doyle Dep. 48:6-49:6.) Doyle selected the preppers to terminate based on "their prep rates[, which] consist of how fast they are, how their quality was and how accurate they were." (Doyle Dep. 59:21-24.) He also considered disciplinary issues, knowledge of the job, and attendance. (Doyle Dep. 60:4-11.) Doyle testified,

> "The temps were the first to go. . . . We got rid of the temps first. That had us down to about eight, nine employees.
> I held on [to] the nine as long as I could, because . . . after the two processes of the big clients were minimized, we had a lot of little projects to finish. . . . Then once the work was even lower in volume, we . . . laid off our two part-time people.
> So after the three temps, two-part time, that had the 12 down to about seven. So I worked with seven preppers for a few weeks until it got extremely – to the slowest it ever was . . . . I had to lay off the final three, which I believe that's where [Michniewicz] came into play."

(Doyle Dep. 50:4-51:2.)

Metasource decided to discharge Plaintiffs in May 2009, when both were still on FMLA leave, and their terminations took effect on June 15, 2009. (Michniewicz Def.'s Facts ¶¶ 6, 13; Keough Def.'s Facts ¶ 7; Doyle Dep. 87:8-10.) Michniewicz was not informed of her layoff until June 2009, and the effective date of her layoff was delayed until June 15, 2009, the day when she had been "physically cleared to resume working without [medical] restrictions." (Pls.' Facts ¶¶ 25-26; Def.'s Resp. to ¶ 25-26.) Preppers were the only personnel terminated during this reduction.[7] (Doyle Dep. 58:24-59:6.)

---

[7] The parties dispute whether the testimony of William Jones, Metasource's Vice President of Operations until December 2009, that he was not familiar with Plaintiffs and did not participate in the determination that they should be let go (Jones Dep. 22:14-19), contradicts Metasource's representation in its responses to Plaintiffs' interrogatories, that the decision to terminate Michniewicz and Keough was made jointly by Doyle and Jones (Pls.' Facts ¶ 44, Ex. E ¶ 5, Ex. G ¶ 5). Although Plaintiffs contend that these statements directly contradict one another, Metasource responds that Jones only "made the decision that a reduction needed to be made," which Doyle executed by selecting the preppers who would be let go. (Def.'s Resp. to Facts ¶ 44.) Doyle testified that Jones participated in determining that Metasource would have to terminate several preppers, given the reduced volume of work (Doyle Dep. 48:12-20), and

Later in May 2009, Metasource acquired an additional fifteen preppers from Capture Resources. (Doyle Dep. 29:21-22, 32:19-33:5.) Doyle then reduced the Capture Resources preppers down to twelve based on prep and speed rates, quality and accuracy rates, and his

> "own judgment meaning who takes longer cigarette breaks, who uses the bathroom more, who didn't show up on these certain days, who wouldn't stay longer for us . . . who would sit down for the majority of the day, who would take extra breaks, who would sneak off for a little bit, [and] who would play with their iPod too much."

(Doyle Dep. 33:15-18, 34:11-35:8.) Although he admitted he did not have access to their rates for their tenure at Capture Resources, he conducted tests on behalf of Metasource. (Compare Doyle Dep. 84:1-3; with Doyle Dep. 21:14-20, 33:12-18, 34:6-9.)

Plaintiffs dispute that Metasource terminated them because of a lack of work. Plaintiffs aver that they were not given specific reasons for their layoffs, but Metasource contends that they were told there had been a "reduction in force." (Pls.' Facts ¶¶ 25-26; Def.'s Resp. to ¶¶ 25-26.) Plaintiffs, however, contend that Metasource anticipated an increase in business once the acquisition was finalized, which occurred in May 2009. (Doyle Dep. 23:1-3.) In fact, Doyle testified that the workforce he supervised nearly doubled after the acquisition. (Doyle Dep. 27:14-21, 28:18-20.) In particular, after the acquisition, Doyle was supervising sixteen preppers.[8]

---

Jones testified that he made the decision that Metasource needed to reduce the number of prep orders, but Doyle "decided on the individuals to lay off" (Jones Dep. 24:13-15, 22:23-24). As a result, Jones's testimony confirms that Jones was involved in the decision to reduce the number of prep hours, but not in selecting the individuals to lay off, which does not contradict Metasource's interrogatory response.

[8] Plaintiffs contend that after the merger, the "actual number of preppers" at Metasource "more than tripled." (Pls.' Facts ¶ 43). The portion of Doyle's deposition testimony on which Plaintiffs rely does not support their argument – at no point during the referenced portion of Doyle's deposition testimony does he discuss the Capture Resources preppers whom Metasource retained. (Doyle Dep. 49:24-51:2.) In earlier testimony, Doyle acknowledged that immediately following the merger, the entire staff he supervised increased three-fold, and that the number of preppers supervised increased by fifteen. (Doyle Dep. 17:9-13.) After additional

6

(Doyle Dep. 28:21-23.) Doyle testified that he was unaware of any requirement to retain any of the Capture Resources preppers after he had the opportunity to evaluate its preppers and operations, but that they should be retained for a period of time to ensure continuity of business. (Doyle Dep. 45:16-21, 46:2-7, 49:7-13.) Nevertheless, Doyle testified that Capture Resources did the same type of work as Metasource, but each company's preppers had duties that were "not that similar." (Doyle Dep. 18:22-24, 33:24-34:1.)

The following chart suumarizes the fluctuations in preppers in 2009.

| Date | No. of Preppers | Record Citation |
| --- | --- | --- |
| Beginning of year – January 2009 | 12 | Doyle Dep. 50:4-51:2 |
| Plaintiffs take leave – April 2009 | 7-9 | Doyle Dep. 50:4-51:2 |
| Termination decision – May 2009 | 7 | Doyle Dep. 50:4-51:2 |
| Immediately before merger – May 2009 | 4 | Doyle Dep. 50:4-51:2 |
| Immediately after merger – May 2009 | 19 | Doyle Dep. 29:19-22, 32:19-33:5 |
| Termination effective date – June 15, 2009 | 16-19 | Doyle Dep. 17:9-13, 46:2-7 |
| Immediately after consolidation – July 2009 | 16 | Doyle Dep. 28:21-23 |

C.  **Procedural History**

On July 2, 2009, and October 15, 2009, Michniewicz and Keough respectively commenced their actions against Metasource. (Michniewicz, ECF No. 1; Keough ECF No. 1.) Metasource filed Answers and Affirmative Defenses to Michniewicz's and Keough's Complaints on August 31, 2009, and December 11, 2009, respectively. (Michniewicz, ECF No. 6; Keough, ECF No. 4.) On April 27, 2010, the two cases were consolidated for discovery purposes

---

terminations, the new staff was twice the size of his pre-merger staff, and the number of preppers ultimately increased from twelve to sixteen. (Doyle Dep. 26:18-28:23.)

(Michniewicz, ECF No. 26; Keough, ECF No. 10.)

The parties subsequently conducted discovery. Metasource filed the pending Motions for Summary Judgment, which seek to dismiss both actions in their entirety, on July 15, 2010. (Michniewicz, ECF No. 28; Keough, ECF No. 11.) Plaintiffs and Metasource submitted additional letter briefing on the issues of pretext (Michniewicz, ECF No. 37; Keough, ECF No. 20) and discriminatory statements (Michniewicz, ECF No. 39; Keough, ECF No. 21), respectively, and the Court held oral argument on September 28, 2010.

## II. Jurisdiction and Legal Standards

### A. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs bring claims under the FMLA, 29 U.S.C. § 2601 et seq. Venue is proper under 28 U.S.C. § 1391(b).

### B. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proof on a particular

8

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the non-moving party's response must, "by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. Id. Further, credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id. Notably, the court should not consider the record in piecemeal fashion, giving credence to innocent explanations for individual evidence, because a jury would be entitled to view the evidence as a whole. See Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 285 (3d Cir. 2001).

## III. Discussion

The FMLA's "stated purposes" are "to 'balance the demands of the workplace with the needs of families,' and 'to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers.'" Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140-41 (3d Cir. 2004) (quoting 29 U.S.C. § 2601(b)(1), (b)(3)). An "eligible employee" under the FMLA, therefore, is entitled to "a total of twelve workweeks of

leave during any twelve month period" if he or she has a "serious health condition that makes [him or her] unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1)(D). "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

Metasource seeks to dismiss Plaintiffs' interference and retaliation claims under the FMLA. The Court will address each set of claims in turn.

### A. Interference

#### 1. Parties' Contentions

In seeking summary judgment relief and dismissal of the FMLA interference claims, Metasource avers that Plaintiffs have "no support for [their] interference claim[s], other than the bald allegation that [they were] terminated while [they were] on FMLA leave." (Summ J. Mots. 6.) Metasource further contends that because it is undisputed that Plaintiffs were selected for the reduction in force by their supervisor in light of their poor performance, their claims must fail because they were not terminated because they took FMLA medical leave. (Summ. J. Mots. 6-7.) Metasource points the Court to Kelley v. AmerisourceBergen Corp., No. 08-2377, 2009 WL 3127752 (E.D. Pa. Sept. 29, 2009) (Jones, J.), which purportedly has "remarkably similar" facts, and granted summary judgment in favor of the defendant. (Summ. J. Mots. 6-7.)

Plaintiffs respond that the FMLA entitles them to reinstatement, and that Metasource "in fact had available job positions for [them]," as evidenced by its hiring of at least fourteen other preppers from Capture Resources, resulting in triple the number of preppers working under Doyle. (Summ. J. Resp. 8-9.) While Plaintiffs concede that an employer need not reinstate an

employee who took FMLA leave when there is a "bonafide" reduction in force, in this case, Plaintiffs assert Metasource did not fire Plaintiffs for this reason. (Summ. J. Resp. 9.)

In reply, Metasource asserts that the undisputed facts demonstrate that Plaintiffs' discharges were due to the company's reduction in force, and that additional document preppers were only brought on board later in the year, after the reduction occurred, from a company acquired by Metasource. (Summ. J. Reply 4.) According to Metasource, Doyle's and Plaintiffs' deposition testimony demonstrate that work declined prior to Plaintiffs' discharges, and that Metasource terminated eight preppers, of which two were Plaintiffs. (Summ. J. Reply 4-5.)

### 2. Legal Standards

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). Upon returning from FMLA leave, an eligible employee is "entitled to be reinstated to his or her former position, or an equivalent one." Conoshenti, 364 F.3d at 141 (citing 29 U.S.C. § 2614(a)(1)). The employee, however, is not entitled to "a right, benefit or position to which [he or she] would not 'have been entitled had the employee not taken the leave.'" Id. (quoting 29 U.S.C. § 2614(a)(3)(B)). "Thus, for example, if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement." Id. (citing 29 C.F.R. § 825.216(a)(1)).

"To assert an interference claim, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 399 (3d Cir. 2007) (quotation marks omitted). Thus, "the employee need not show that he was treated differently than others, and the employer cannot justify its actions by

establishing a legitimate business purpose for its decision." Id. (quotation marks and alteration omitted). The Third Circuit has cautioned that "[a]n interference action is not about discrimination," but instead, is "about whether the employer provided the employee with the entitlements guaranteed by the FMLA," e.g. leave plus reinstatement. Id. (quotation marks omitted); Callison v. City of Philadelphia, 430 F.3d 117, 119-20 (3d Cir. 2005); see also Martin v. Brevard County Pub. Sch., 543 F.3d 1261, 1267 (11th Cir. 2008) (noting employer's motives are irrelevant). As such, Doyle's alleged discriminatory statements to Michniewicz do not impact the Court's analysis.

The employee bears the initial burden of showing both elements of the interference claim, and then the burden shifts to the employer to show there was no position available or that it offered the employee an equivalent position which the employee declined. Spagnoli v. Brown & Brown Metro, Inc., No. 06-414, 2007 WL 2362602, at *11 (D.N.J. Aug. 15, 2007); see Atchison v. Sears, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009) (indicating employer can escape liability if it can establish that it terminated employee for reason unrelated to leave).

### 3. Analysis

Metasource's motions for summary judgment fail against Plaintiffs' interference claims because there is a genuine dispute of material fact regarding the legitimacy of the reduction in force. Therefore, Plaintiffs are entitled to present their evidence in a trial context. See, e.g., Marzano v. Computer Sci. Corp., 91 F.3d 497, 506 (3d Cir. 1996) (concluding whether a reduction in force occurred is question of fact); Stell v. PMC Techs., Inc., No. 04-5739, 2006 WL 2540776, at *2 (E.D. Pa. Aug. 29, 2006) (Baylson, J.) (denying summary judgment in light of disputes of fact in reduction-in-force case).

A workforce reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). An employee is not eliminated as part of a reduction in force when he or she is replaced after his or her discharge, and an employee is replaced only when another employee is hired or reassigned to perform the terminated employee's duties. Id. A terminated employee is not replaced, however, when another employee is assigned to perform the terminated employee's duties in addition to other duties, or when work is redistributed among other remaining employees already performing related work. Id.

As illustrated in the foregoing chart, between January and July 2009, the number of preppers on staff increased from twelve to sixteen, despite Metasource's contention that it experienced a reduction in force. Although the aggregate number of preppers between Metasource and Capture Resources, before any reductions at either company, exceeded twenty-five, we must make all reasonable inferences in Plaintiffs' favor. Further, although Doyle testified that the preppers' work at each company was not that similar, he also conceded that the nature of the companies' work was the same. Thus, a reasonable trier of fact could infer that the Capture Resources preppers performed the same functions as the Metasource preppers, and that they replaced Plaintiffs in light of the net increase in Metasource preppers. Accordingly, Plaintiffs have raised sufficient issues of material fact concerning whether the number of positions performing the same type of work actually increased, and whether additional preppers were hired or reassigned to perform the same type of work as Plaintiffs. If the jury concludes the reduction in force was not genuine, then it could also conclude there were positions available for reinstatement, which Plaintiffs were denied.

B. Retaliation

1. Parties' Contentions

Metasource argues that Plaintiffs cannot establish the causal link essential to a prima facie case of FMLA retaliation. (Summ. J. Mots. 8-9.) Metasource also contends that in the alternative, even assuming that Plaintiffs can do so, there is no evidence that Metasource's legitimate, non-discriminatory reason for the layoffs – that Plaintiffs' positions were eliminated as part of a reduction in force – is pretextual. (Summ. J. Mots. 8-9.) According to Metasource, "the issue of how [it] conducted its assessment of Plaintiff[s'] performance, or whether [Doyle] correctly assessed [their] skills, is beside the point," because "[i]t is the employer's assessment of the employee's skills that matters." (Summ J. Mots. 11.)

Plaintiffs respond that the facts supporting the alleged reduction in force are inconsistent and the reason as a whole is implausible, Doyle made direct discriminatory statements to Michniewicz, and the temporal proximity between Plaintiffs' FMLA leave and their terminations suggests a retaliatory motive. (Michniewicz, ECF No. 37; Keough, ECF No. 20.)

In reply, Metasource argues that Plaintiffs simply disagree with its business decision, which is insufficient to defeat summary judgment, and they focus on the "irrelevant" fact of the Capture Resources acquisition "in a transparent attempt to create the appearance of material facts." (Summ. J. Reply 4-5.) Metasource also contends that Doyle's alleged discriminatory statement is merely a stray remark and, therefore, is insufficient to establish pretext and defeat summary judgment. (Michniewicz, ECF No. 39; Keough, ECF No. 21.)

2. Legal Standards

Subsection 825.220(c) of the FMLA regulations explains that the Act's "prohibition

14

against 'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights," for example by "us[ing] the taking of FMLA leave as a negative factor in employment actions," or counting FMLA leave "under 'no fault' attendance policies." 29 C.F.R. § 825.220(c). Although such language speaks to retaliation in the context of FMLA interference, the Third Circuit, along with other courts of appeals to have considered the question, have determined that "claims that an employee has been discharged in retaliation for having taken an FMLA leave" violate subsection 825.220(c). Conoshenti, 364 F.3d at 146 n.9.

For such claims, the Third Circuit requires a plaintiff to establish a prima facie case of retaliation under the FMLA, by "show[ing] that (1) he [or she] took an FMLA leave, (2) he [or she] suffered an adverse employment decision, and (3) the adverse decision was causally related to his [or her] leave."[9] Id. at 146.

Once a plaintiff has shown a prima facie case of retaliation under the FMLA, "the familiar burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)," applies, such that "the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action," and if this is met, the burden of production shifts back to the plaintiff, who "must prove by a preponderance of the evidence that [the] defendant's proffered reason was a pretext for discrimination." Parker v.

---

[9] There are three ways to show a causal connection: temporal proximity, antagonism, or pretext. O'Hare v. McLean Packaging & Trucking, No. 08-2083, 2009 WL 3207277, at *8 (D.N.J. Sept. 29, 2009); see also Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001) ("[P]retext evidence can be relevant to causation."); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000) (recognizing questions of pretext and causation can become conflated because they are very similar issues). Michniewicz contends that Doyle's statements regarding her hands constitute evidence of discriminatory animus sufficient to establish a causal connection. Keough, however, does not allege she was the target of similar statements.

15

Verizon Pa., Inc., 309 Fed. App'x 551, 555 (3d Cir. 2009); see also Brown v. DB Sales, Inc., No. 04-1512, 2005 WL 3591533, at *6 (E.D. Pa. Dec. 29, 2005) (Baylson, J.).

At the final stage, to defeat summary judgment, Plaintiffs must point to some direct or circumstantial evidence from which a factfinder could reasonably either (1) disbelieve Metasource's articulated reason, or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of Metasource's action. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To do so, Plaintiffs can either (1) discredit Metasource's reason, by coming forward with such weaknesses, implausibilities, incoherencies, inconsistencies, or contradictions in the proffered reason to allow a rational factfinder to find the reason unworthy of credence, or (2) adduce evidence that discrimination was more likely than not a motivating or determinative cause.[10] Id. at 764-65. Plaintiffs' evidence must allow a reasonable factfinder to infer that each proffered reason was either a post hoc fabrication or otherwise did not actually motivate the employment decision. See id. at 764.

Although Plaintiffs need not directly contradict Metasource's proffered reason, id., the Third Circuit has required plaintiffs to come forward with evidence contradicting the core facts put forward by the employer as the reason for its decision, Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). Notably, proof of pretext does not have to include evidence of

---

[10] In an attempt to adduce evidence of a discriminatory motive, Plaintiffs cite a notation on an email, which indicates that someone at Metasource consulted the Department of Labor regarding terminating Michniewicz. (Pls.' Facts, Ex. I.) The notation states, "must show proof of layoff (that it was going to happen) a complaint may be filed (could look suspicious) company must present proof," and then cites an applicable regulation. (Pls.' Facts, Ex. I.) Even assuming this document is admissible, the Court does not think legal consultation is evidence of pretext, and notably, the court in Kelley did not even reference a similar fact in its analysis. See Kelley, 2009 WL 3127752, at *6, *7-9. Because there are sufficient grounds to deny Metasource's Motions for Summary Judgment, the Court need not resolve the probative value of this email and notation at this time.

discrimination; rather, "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Kautz, 412 F.3d at 466 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (alteration and quotation marks omitted)).

3.  Analysis

The parties do not dispute either of the first two elements of Plaintiffs' prima facie case; therefore, "[t]he issue for decision . . . is whether the summary judgment record reflects a material dispute of fact as to whether there was a causal connection between the two." Conoshenti, 364 F.3d at 147. For the same reason the Court denied summary judgment on the interference claims, it will deny summary judgment on the retaliation claims – there are outstanding issues of material fact regarding the legitimacy of the purported reduction in force.

In the retaliation-claim context, the jury could conclude that Metasource's proffered reason[11] is pretextual for intentional discrimination, which also serves to establish a prima facie case. See Weston, 251 F.3d at 432 ("[P]retext evidence can be relevant to causation."); Farrell, 206 F.3d at 286 (recognizing questions of pretext and causation can become conflated because issues are very similar). Because Plaintiffs have brought forth facts attacking the core of Metasource's proffered reason, e.g. the workforce increased rather than decreased, and sufficient weaknesses to allow a reasonable factfinder to disbelieve Metasource's proffered reason, the Court will deny summary judgment on Plaintiffs' claims. Having concluded that Plaintiffs have

---

[11] Metasource cites a reduction in force and Plaintiffs' comparatively lower performance to justify their terminations. This is a valid non-discriminatory reason. Marione v. MetLife Ins. Co., 188 Fed. App'x 141, 144 (3d Cir. 2006) (recognizing reduction in force and performance comparison among peers as legitimate, non-discriminatory reason satisfying articulation burden). Consequently, the burden returns to Plaintiffs to demonstrate the asserted reason is pretextual. Parker, 309 Fed. App'x at 555.

shown a causal connection based on pretext, the Court finds it unnecessary to consider Plaintiffs alternative arguments of temporal proximity and antagonistic statements.

As noted earlier, Metasource also brought the Court's attention to a recent case with "remarkably similar" facts, Kelley v. AmerisourceBergen Corp., No. 08-2377, 2009 WL 3127752 (E.D. Pa. Sept. 29, 2009) (Jones, J.). The disparate result in this case should not imply any disagreement with the result in Kelley. Instead, despite the remarkable similarity, there are significant factual differences that distinguish the cases and justify this Court's conclusion. Most notably, Kelley was terminated after a well-documented reduction-in-force process and no new hires subsequently performed her tasks. Id. at *5-6, *8.

IV. **Conclusion**

For the foregoing reasons, Metasource's motions for summary judgment (Michniewicz, ECF No. 28; Keough, ECF No. 11) will be **denied**. An appropriate Order will follow.

O:\CIVIL 09-10\09-2974 - Michniewicz\Michniewicz Keough -- MSJ Memorandum.wpd